AM

RECEIVED

SEP 7 2010
MP

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONVILLE JAMES, )

Plaintiff,

10CV5675
JUDGE HOLDERMAN
MAGISTRATE JUDGE COX

vs.

ERIC HOLDER, U.S. ATTORNEY GENERAL,
PATRICK FITZGERALD, U.S. ATTORNEY, )
PATRICK COLLINS, ASSISTANT U.S. ATTORNEY, )
VALARIE HAYS, ASSISTANT U.S. ATTORNEY, )
FRANK DEPODESTA, FBI SPECIAL AGENT, )
DANIEL DICK, U.S.S.S. AGENT, )

Defendants. )

## NOTICE OF FILING

To: Patrick Fitzgerald
United States Attorney
219 S. Dearborn Street
5th Floor
Chicago, IL. 60604

**PLEASE TAKE NOTICE** that on 1 day of September, 2010, I caused to be filed with the Clerk of the U.S. District Court for U.S. District Court for the Northern District of Illinois, Eastern Division, the following:

1. Complaint

2. Affidavit of Criminal Charges by Witness and Victim of Criminal Activities,

and Service, which is being made upon you.

Respectfully Submitted,

[signature]

Date: September 1, 2010

Donville James, pro se
Reg. No. 14388-424
Federal Medical Center
Box 4000, Unit 2/2
Rochester, MN. 55903-4000

AM

RECEIVED

SEP 7 2010 MB

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONVILLE JAMES,

Plaintiff,

vs.

ERICK HOLDER, U.S. ATTORNEY GENERAL,
PATRICK FITZGERALD, U.S. ATTORNEY,
PATRICK COLLINS, ASSISTANT U.S. ATTORNEY,
VALARIE HAYS, ASSISTANT U.S. ATTORNEY,
FRANK DEPODESTA, FBI SPECIAL AGENT,
DANIEL DICK, U.S.S.S. AGENT,
JOHN DOE, U.S.S.S. AGENT,

Defendants.

10CV5675
JUDGE HOLDERMAN
MAGISTRATE JUDGE COX

Civil Action

## I. COMPLAINT

1. Plaintiff, Donville James, pro se, for his Complaint states as follows:

## II. PARTIES, JURISDICTION AND VENUE

2. Plaintiff is currently confined at the Federal Medical Center at PMB 4000, Rochester, MN. 55903-4000.

3. Plaintiff, Donville James is, and was at all times, mentioned herein, an adult citizen of Jamaica and a legal resident of the United States and the State of Illinois.

4. Defendant, Erick Holder, at times herein the Attorney General of the United States.

5. Defendant, Patrick Fitzgerald, was at all relevant time, herein, the United States Attorney with responsibility for operation over the prosecution of cases in the Chicago Office of the U.S. Attorney.

6. Defendant Patrick Collins, was at times relevant herein, co-prosecuting attorney over the Government's prosecution of Plaintiff's Criminal Case in the Chicago Office of the U.S. Attorney.

7. Defendant, Valarie Hays, was at times relevant herein, co-prosecuting attorney over the Government's prosecution of Plaintiff's Criminal Case in the Chicago Office of the U.S. Attorney.

8. Defendant, Frank DePodesto, was at all times relevant special agent with the Federal Bureau of Investigation who made all the recordings in Plaintiff's Criminal Case.

9. Defendant, Daniel Dick, was at all times relevant special agent with the United States Secret Service who was Agent in Charge of the investigation of Plaintiff, and who inventoried the recorded conversations in Plaintiff's Criminal Case.

10. Defendant, John Doe, was at times relevant special agent with the United States Secret Service.

11. This action arises under and is brought pursuant to 28 U.S.C. § 1331(a)(Bivens Action) to remedy the deprivation, under Color of Law, of rights guaranteed by the Fourteenth Amendment of the United States Constitution. This Court has Jurisdiction over this action pursuant to 28 U.S.C. § 1331.

12. This cause of action arose in the Northern District of Illinois. Therefore, venue is proper under 28 U.S.C. § 1391(b).

## III. PREVIOUS LAWSUITS BY PLAINTIFF

13. Plaintiff has filed other lawsuits dealing with the same facts involved in this action.

14. In August of 2006, Plaintiff filed a Complaint for Declaratory and Injunctive Relief pertaining to the records of Donville James (Plaintiff). Records that are stored away in a Secret Service "Investigative" file. Case No. 06-1951(GK) was filed with the Clerk of the U.S. District Court for the District of Columbia with Defendants, U.S. Secret Service, Federal Bureau of Investigation, and the Department of Justice.

15. The Government moved for Summary Judgment, citing 5 U.S.C. § 552 (b)(7)(A) as authority that exempted the Government from disclosing the requested material in the "investigative" file.

16. The Court agreed with the Government claim of exemption under5 U.S.C. § 552 (b)(7)(A) and Granted Summary Judgment. See James v. U.S. Secret Service, No. 06-CV-1951, 2007 WL 2111034 (DDC 7/23/07).

17. When the Government claim of exemption, 5 U.S.C. § 552 (b)(7)(A), was no longer valid, Plaintiff made another request for the disclosure of the materials in the Secret Service Investigative file, originally sought through the FOIA/PA.

18. The Government then sent a letter to Plaintiff, informing Plaintiff that the Government had destroyed the requested materials in the Investigative File.

19. In December of 2009, Plaintiff filed Motion with the Court requesting an investigation in the alleged destruction of the requested material and also for the Court to declare that the

Government was in violation of FOIA/PA. This Motion was denied by the Court, July 29, 2010. The Court stated, the proper way to bring the claims in the Motion is through a New Complaint. See James v. United States Secret Service, No. 06-CV-1951, 2007 WL 2111034 (D.D.C. July 29, 2010).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

20. Plaintiff has fully exhausted all administrative remedies to have full disclosure of the requested materials in the investigative file.

21. Plaintiff, has made a Direct Appeal to the FOA Appeal Deputy Director, U.S. Secret Service to have full disclosure. Plaintiff has also presented the facts relating to his Complaint to the Attorney General of the United States, Eric Holder, requesting an investigation into the continued violation of Plaintiff's Constitutional Rights by individuals who work under the Department of Justice.

## V. STATEMENT OF CLAIM

22. At all relevant times herein, Defendants were "person" for purpose of Biven and acted under Color of Law to deprive Plaintiff of his Constitutional Rights, as set-forth more fully below.

## VI. STATEMENT OF FACTS

23. In February of 2002, the United States Secret Service (USSS) was charged to investigate Plaintiff's involvement in the alleged manufacturing of United States Currency.

24. Secret Service Special Agent (SSSA), Defendant Daniel Dick, was assisgned as Agent-in-Charge of the investigation.

25. The Secret Service was notified by FBI Agent, Frank Sobetz,

that the FBI had a criminal informant who had information about a person (Plaintiff) who was involved in manufacturing counterfeit United States Currency.

26. FBI Agent Sodetz, was assigned to handle the criminal informant as the primary handler.

27. The Criminal informant started working for the FBI in November of 2001, in order to work his way out of a criminal drug case in the Cook County Circuit Court of Chicago.

28. The criminal informant tried unsuccessfully to entrap Plaintiff in a drug crime between November of 2001 and March of 2002.

29. The FBI found no evidence that Plaintiff was involved in illegal drug activities and in February of 2002, FBI Sodetz, contacted the Secret Service and informed them that their informant may have information about an individual who was involved in manufacturing counterfeit United States Currency.

30. After FBI Agent Sodetz, contacted the Secret Service, Defendant Frank Depodesta, was then assigned to the informant as a secondary handler.

31. Defendant, FBI Agent Depodesta, responsibility was to make the informant available to the Secret Service in their investigation of Plaintiff for manufacturing Counterfet currency.

32. The informant had given the FBI consent to record his telephone conversations with Plaintiff.

33. During the month of March, 2002, FBI Agent Depodesta, recorded several conversations between the informant and Plaintiff.

34. Defendant DePadesta, then handed over the recorded conversation to Defendant Daniel Dick, who, as Agent in Charge of the Counterfeiting investigation, inventoried the recorded conversations on Secret Service File (SSF) 1544, with individual serial numbers.

35. Plaintiff was arrested on March 25, 2002, by the U.S. Secret Service.

36. The informant and his primary handler, FBI Agent Sadetz, met with the Defendants Valerie Hays and Patrick Collins, and gave them a statement regarding the circumstances surrounding the investigation of Plaintiff's alleged involvement in the manufacturing of counterfeit currency.

37. The informant told Defendants Hays and Collins that because of his financial debt he had with the Mexican Drug Organization, his and his family's lives were in danger. At which time, he approached Plaintiff and asked Plaintiff if he could help him with his situation.

38. The informant told the Defendants that it was at this point, Plaintiff suggested that he could provide the informant with counterfeit money, that the informant himself could use and purchase drugs from a dealer then the informant himself could sell the drugs for cash, and use the money to pay off his debt.

39. Defendants Hays and Collins were not satisfied with what the informant had told them. So just before the informant was to go before the Grand Jury, Defendant Hays and Collins, gave

him a prepared statement to read before the Grand Jury as his testimony of the circumstance surrounding the investigation of Plaintiff.

40. In this new "prepared statement" prosecutors Hays and Collins instructed the informant to change his statement, that it was Plaintiff who was attempting to purchase the drugs from the informant's source with the counterfeit money.

41. The informant read Defendants' Hays & Collins "prepared statement" before the Grand Jury as his testimony of Plaintiff's involvement in the circumstance surrounding the counterfeiting investigation.

42. The Grand Jury then returned on Indictment against Plaintiff for attempting to possess cocaine with the intent to distribute.

43. Plaintiff knew he had not attempted to purchase cocaine, requested a Jury Trial because he could prove his innocence by using the recorded conversation that took place on March 25, 2002, recorded by Defendant DePodesta and inventoried by Defendant Dick on SSF 1544 with serial number 201-2002-CE-000442.

44. During pretrial Plaintiff made a timely request for disclosure of the recorded conversations that were inventoried in SSF 1544.

45. In particular, Plaintiff made a timely request for disclosure of the body wired conversation made by Defendant DePodesta of the conversation between the informant and

Plaintiff, made the day Plaintiff was arrested, March 25, 2002.

46. Defendant's prosecutors, Hays and Collins, then instructed Defendant DePodesta to deny the existence of the March 25, 2002 recorded conversation.

47. Defendants' Hays and Collins stated, Defendant DePodesta failed to record the March 25, 2002 conversation because he was testing the equipment and left it off by mistake.

48. Defendant DePodesta then stated that he did not record the March 25, 2002 conversation because he left the recording equipment off by mistake.

49. Defendants' Hays, Collins, and DePodesta's statements about the March 25, 2002 recorded conversation, contradicted the Certified Inventory of evidence sheet, prepared by Defendant Daniel Dick.

50. Defendant Daniel Dick, inventoried the March 25, 2002 recorded conversation on SSF 1544 with serial number 201-2002-CE-000442.

51. Defendant Daniel Dick described the March 25, 2002 recorded conversation as: "The below item was recovered from FBI Agent DePodesta on March 25, 2002. One compact disc 41 minutes in length, has been inventoried on SSF 1544, serial number 201-2002-CE-000442."

52. Defendant Daniel Dick also described the inventory of the March 25, 2002 recorded conversation in his report of the Disposition of Evidence and Contraband List as: "One compact disc containing the recording of the body wire placed on the

criminal informant by the FBI on March 25, 2002, has been inventoried on SSF 1544 with serial number 201-2002-CE-000442."

53. The March 25, 2002 recorded conversation was inventoried on SSF 1544 by Defendant Dick. The inventory was witnessed by SSSA Michael Newberg, and supervised by SSSA Glenn R. Westlund, on March 25, 2002.

54. Because the Certified Inventory of Evidence List and the composition of evidence and contraband showed that Defendants Hays, Collins, and DePodesta were misrepresenting the truth of the existence of the March 25, 2002 recorded conversation, Plaintiff requested disclosure of the recording device.

55. Defendants Hays, Collins, and DePodesta stated that the recording device was a digital recorder which records the contents directly to the memory of the device. Defendant DePodesta, at some later time, plugged a wire into the device and downloaded the content to a CD Rom. Right after the contents of the device is downloaded to a CD Rom, the contents in the memory then automatically erase from the device and the CD Rom then becomes the evidence.

56. Which prompted Plaintiff to request disclosure of the recording device, because the recording equipment as described by the Defendants, violated the Statute that governs the collection of electronic communication, 18 U.S.C. § 2518(8)(a), which states that the content of any oral or electronic communication must be recorded on tape, wire, or "comparable device" and the content shall not be destroyed and in any event

shall be kept for ten (10) years.

57. The prosecutors, Hays and Collins, had agreed to disclose the recording device but later realized that they could not disclose the device because it would have shown that Defendants DePodesta, Hays, and Collins had misrepresented the truth about the type of equipment used to make the recording.

58. Disclosure would have shown that the device was just a simple recorder, used by everyday law enforcement personnel, and not some high tech device as described by the Defendants. And, that the type of equipment described by the Defendants was just a part of the Defendants ploy not to disclose the March 25, 2002 recorded conversation, which was the output of the recording device.

59. In order to save the Defendant's fictitious criminal prosecution of Plaintiff, U.S. Attorney Patrick Fitzgerald stated, the recording equipment was a matter of "National Security" and disclosure of the recording device should be denied.

60. Plaintiff was convicted of attempting to possess with intent to distribute cocaine, and his Trial Jury never got to hear the most important piece of evidence, the March 25, 2002 recorded conversation, that would have vindicated Plaintiff, because the Defendants claimed they did not have the recorded conversation. When all along the recorded conversation was in their possession, inventoried on SSF 1544, which was 41 minutes in length: with Serial NO. 201-2002-CE-000442.

61. During the Appeal's process of Plaintiff's criminal case, Plaintiff again attempted to get full disclosure of the March 25,, 2002 recorded conversation and the other recordings in the investigative file.

62. In August 2005, Plaintiff made a FOIA/PA request, pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552(a), for full disclosure of the recordings in Investigative file, SSF 1544.

63. The Secret Service did a search for the requested materials and informed Plaintiff that their search resulted with the findings that the March 25, 2002 recorded conversations, and all the other recordings, were stored in the Secret Service "investigative" file in their Chicago Field Office.

64. The Secret Service then only released copies of the Certified Inventory of Evidence, showing that the recordings were indeed inventoried in their "investigative" file, otherwise known as SSF 1544, in their Chicago Field Office.

65. In August 2006, Plaintiff filed a Law Suit in the U.S. District Court in the District of Columbia, to have full access to the requested materials in the "investigative" file. Case No. Civil Action 06-1951(GK).

66. At the time of the Law Suit, Plaintiff's criminal case was on Direct Appeal in the U.S. Court of Appeals in the Northern District of Illinois.

67. The Government then moved for Summary Judgment, sighting exemption, 5 U.S.C. § 552(b)(7)(A), stating that because Plaintiff's criminal case was still open on Direct Appeal,

disclosure of the recordings in the "investigative" file could harm the Government's criminal case against Plaintiff. And, until Plaintiff's Direct Appeal is over, the Government cannot disclose the recordings in the "investigative" file.

68. The Court agreed with the Government and Granted Summary Judgement to the Government, in 2007.

69. Because of Plaintiff's transfer between BOP Institutions, Plaintiff did not make another request for the materials in the "investigative" file until February 2008.

70. Plaintiff, by letter, then made a Formal Request to the Freedom of Information and Privacy Act Officer, Kathy J. Lgerly, informing her that Plaintiff's Criminal Conviction was closed in United States v. James, 487 F.3d 518 (7th Cir. 2007) and that exemption 5 U.S.C. § 552(b)(7)(A) was no longer valid, and that the requested materials in the "investigative" file should be disclosed to Plaintiff, pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552(a).

71. Plaintiff again was sent copies of the Certified Inventories of Evidence sheets, showing the requested materials were inventoried in Investigative File, SSF 1544.

72. Plaintiff immediately appealed to the Freedom of Information Appeal Deputy Director, U.S. Secret Service Communication Center, informing the Deputy Director that Plaintiff's request is for hard copies and transcripts of the recordings in the "investigative" file, and not for copies of the Certified Inventory of evidence sheets. Plaintiff requested that hard copies of the recordings and transcripts of the March

25, 2002 recorded conversations and copies of the other conversations in the "Investigative" file be disclosed to him, pursuant to FOIA/PA and be sent to Plaintiff in care of his Counselor at the Federal Medical Center, Rochester, MN.

73. The Deputy Director informed Plaintiff, in December 2009, that disclosure of the investigative file could not be made because the United States Secret Service had destroyed all the materials in the Secret Service Investigative File.

74. Approximately two months after Attorney General Holder took action to correct the injustice in Senator Stevens', S-Alaska, case, Plaintiff wrote the Attorney General, explaining that the Prosecutors in Plaintiff's Criminal Case were involved in the same kind of egregious action as what had occurred in Senator Stevens' case by holding exculpatory evidence from Plaintiff, the Court, and the Jury. The Attorney General has not responded to Plaintiff's request to have the Office of Professional Responsibility investigate the Office of the U.S. Attorney in Chicago, and both the Chicago Field Office of the FBI and the Secret Service, for professional misconduct by individuals.

75. The Government admitted in their Motion for Summary Judgment that their criminal case against Plaintiff cannot withstand the vigorous test of the American Jurisprudence if the recording(s) were disclosed to the Public. This admission emphasizes that the Government knew they had brought and continues to harm Plaintiff by a wrongful conviction on a fictitious drug charge.

76. The "alleged" destruction of the recordings, that will vindicate Plaintiff, by individuals on behlaf of the United States Government is another attempt to permanently harm Plaintiff, mentally, physically, and financially by keeping Plaintiff incarcerated, and away from his children, without proper Due Process.

**COUNT ONE: CONSPIRACY AGAINST RIGHT**

77. Plaintiff realleges and incorporates, by reference, his allegations in paragraphs 1 through 76 as if fully restated herein.

78. Defendants, Assistant U.S. Attorneys, Valerie Hays and Patrick Collins, FBI Agent Frank DePodesta, Secret Service Agent Daniel Dick, U.S. Attorney, Patrick Fitzgerald, and Defendant John Doe exercised deliberate indifference to Plaintiff's Fourteenth Amendment Right to Due Process. The aforementioned Defendants did knowingly violate 18 U.S.C. § 241, Conspiracy against Rights, in that they conspired together to deprive Plaintiff of his Right to full disclosure, pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552(a), of the records in Secret Service Investigative File, also known as SSF 1544. In particular, the March 25, 2002 recorded conversation which was inventoried on SSF 1544 with serial number 201-2002-CE-000442.

79. Defendant DePodesta, during a criminal investigation of Plaintiff, on March 25, 2002, recorded a conversation between Plaintiff and the Government Criminal Informant. Defendant

DePodesta turned the recorded conversation over to Defendant Dick.

80. On the same day, March 25, 2002, Defendant Dick inventoried the disc, containing the recorded conversation on SSF 1544 with serial number 201-2002-CE-000442. Defendant Dick noted on the Certified Inventory of Evidence Sheet, that he had recovered the disc from Defendant DePodesta on March 25, 2002.

81. Defendant Dick described the disc as: compact disc, approximately 41 minutes in length.

82. The inventory of the compact disc was done by Defendant Dick, witnessed by SSSA Michael Newberg, and Supervised by SSSA Glenn R. Westlund.

83. Defendants Hays and Collins, faced with the fact that they were about to loose their fictitious prosecution of Plaintiff, refused to disclose the March 25, 2002 recorded conversation. Defendants Hays and Collins stated that Defendant DePodesta did not record the conversation because he "forgot to turn the recording device on." Ignoring the fact that Defendant DePodesta had recorded the conversation, which was 41 minutes in length and that he gave the disc, containing the recorded conversation, to Defendant Dick, who inventoried the disc on SSF 1544 with serial number 201-2002-CE-000442.

84. Defendants Hays and Collins, then procured Defendants DePodesta and Dick, to testify that the conversation did not record

because Defendant DePodesta left the recording equipment off by mistake, which both Defendants proceeded to do.

85. In order to make sure Plaintiff did not obtain the March 25, 2002 recorded conversation, Defendants Hays and Collins stated that Defendant DePodesta used a digital recorder that records directly to the memory of the device and that the recording device automatically erased the contents in the memory of the device, once the Agents in Charge downloaded the contents onto a CD Rom. Plaintiff requested disclosure of the recording device, because a device like the one that was described by Defendants Hays, Collins, and DePodesta violates 18 U.S.C. § 2518 (8)(a) which governs the procedure for gathering electronic communication, which states that the content of any wire, oral, or electronic communication must be recorded on tape, or wire, or comparable device...and the <u>recording shell not be destroyed</u>,...and in any event must be kept for ten years.

86. Defendants Hays and Collins, realized that they could not disclose the recording device because disclosure would have revealed that Defendant DePodesta used the correct type of device according to the Statute, to record the March 25, 2002 conversation, and the claim of a digital recorder was a ploy, not to disclose the March 25, 2002 recorded conversation.

87. Defendant, U.S. Attorney, Patrick Fitzgerald, attempted to save Defendants Hays and Collins' case, by claiming that the recording device was a matter of National "Security Interest" and refused to disclose the recording device for which the March

25, 2002 recorded conversation was the output of that device.

88. Plaintiff made another attempt to get full disclosure of the March 25, 2002 recorded conversation, as well as the other recorded conversations in the investigative file.

89. Plaintiff was told that the requested materials were in the Secret Service Investigative File, but because Plaintiff's case was still on direct appeal, disclosure could harm the Government's Case against Plaintiff. After Plaintiff's Direct Appeal was over and Plaintiff's criminal case was closed, Defendant John Doe destroyed the requested materials instead of disclosing them to Plaintiff, as was required under 5 U.S.C. § 552 and 5 U.S.C. § 552(a). Also, in violation of 5 U.S.C. § 2518(8)(a), which requires John Doe to maintain the requested material for a minimum of ten years.

90. The aforementioned Defendants wanted the March 25, 2002 recorded conversation shrouded from the public, because their fictitious criminal prosecution of Plaintiff could not, and cannot, withstand the vigorous test of the American Jurisprudence with the disclosure of the March 25, 2002 audio CD Rom and the other recorded conversations stored in the Secret Service Investigative File. The aforementioned Defendants' deliberate indifference to the laws of the United States and Plaintiff's Due Process Rights were further demonstrated when the Defendants knew that Plaintiff was in jeperdy of loosing his Liberty, wilfully mislead the Court that the March 25, 2002 conversation was not recorded because Defendant DePodesta "left the recording

equipment off by mistake" even though the Certified Inventory of evidence list showed the statement was not true, and that a 41 minute conversation was inventoried on SSF 1544 with serial number 201-2002-CE-000442.

91. The aforementioned Defendant's deliberate indifference to the laws of the United States and to Plaintiff's Due Process Rights, was also further demonstrated when they wilfully destroyed the recorded conversation denying Plaintiff his right to full disclosure under 5 U.S.C. § 552 and 5 U.S.C. § 552(a), because disclosure would have harmed the Government's Criminal Case against Plaintiff.

As a result of the deliberate indifference exercised by the aforementioned Defendants, Plaintiff suffered and continues to suffer serious harm at the hands of the Defendants. Plaintiff cannot exonerate himself from the wrongful conviction perpetrated by the Defendants, because the Defendants violated 18 U.S.C. § 2518 (8)(a), alleging destruction of evidence in the criminal prosecution of Plaintiff, denying Plaintiff full disclosure of the evidence as is required under 5 U.S.C. § 552 and 5 U.S.C. § 552(a), which is in violation of Plaintiff's right to Due Process. As a result of Plaintiff's Due Process violation, at the hands of the aforementioned Defendants, Plaintiff sustained a long term prison sentence of 17½ years. Plaintiff suffers extreme emotional distress as a result of the aforementioned Defendant's conspiring against Plaintiff's right to have full disclosure of the March 25, 2002 recorded conversation, and

all the other recorded conversations in the Secret Service Investigative File. As a result of a wrongful conviction made possible by the aforementioned Defendant's conspiring against Plaintiff's rights to full disclosure of the Investigative File, Plaintiff suffers extreme emotional distress due to the foreseeable deportation to Jamaica, away from his children, after Plaintiff serves the 17½ years prison sentence.

**COUNT TWO: COLOR OF LAW**

92. Plaintiff realleges and incorporates, by reference, his allegations in paragraphs 1 through 91 as if fully restated herein.

93. Assistant U.S. Attorney, Valerie Hays, Assistant U.S. Attorney, Patrick Collins, FBI Agent, Frank DePodesta, SSSA, Daniel Dirk, John Doe, deprived Plaintiff of his Fourteenth Amendment right, guaranteed by the Federal Constitution under Color of Law, in violation of 18 U.S.C. § 242.

94. Defendant Valerie Hays, did knowingly and willfully violate 18 U.S.C. § 1001, Fraud and False Statement, by making materially false, fictitious, fraudulent statements and representation, that the March 25, 2002 recorded conversation did not exist, because the Agents in Charge "left the recording equipment off by mistake."

95. Defendant Patrick Collins, did knowingly and willfully violate 18 U.S.C. § 1001, Fraud and False Statment, by making materially false, fictitious, fraudulent statements and representation,

that the March 25, 2002 recorded conversation did not exist, because the Agents in Charge "left the recording equipment off by mistake."

96. Defendant Frank DePodesta, did knowingly and willfully violate 18 U.S.C. § 1001, Fraud and False Statement, by making materially false, fictitious, fraudulent statements and representations that he did not record the March 25, 2002 recorded conversation in Plaintiff's criminal case, because he "left the equipment off by mistake."

97. Defendant Daniel Dick, did knowingly and willfully violate 18 U.S.C. § 1001, Fraud and False Statement and representation that the March 25, 2002 recorded conversation in Plaintiff's criminal case was not inventoried in the "Investigative" File, because the disc that he got from Defendant DePodesta, containing the conversation was blank.

98. Defendant John Doe, did knowingly and willfully violate 18 U.S.C. § 1519, Destruction of Records in a Federal Investigation in that John Doe destroyed the March 25, 2002 recorded conversation in Plaintiff's criminal case, when 18 U.S.C. § 2518(8)(a) requires Defendant John Doe to maintain the recorded conversation for a minimum of ten years. Defendant John Doe's actions are in violation of 18 U.S.C. § 1519 and 18 U.S.C. = 2518(8)(a), which deprived Plaintiff his right to full disclosure of the March 25, 2002 recorded conversation and the remaining recorded conversations in the Investigative File, pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552(a).

The actions of the aforementioned Defendants, culminated in the "alleged" destruction of the March 25, 2002 recorded conversations, and the Secret Service "Investigative File" that deprived Plaintiff the right to full disclosure of the requested materials, pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552(a), which is a deprivation of Plaintiff's Fourteenth Amendment right to Due Process.

99. As a result of the deprivation of Plaintiff's Fourteenth Amendment Rights by the aforementioned Defendants, Plaintiff is unable to exonerate himself from the Government's Malicious and Fictitious criminal prosecution, that has wrongfully imprisoned Plaintiff for 17½ years. Plaintiff has suffered and continues to suffer extreme emotional distress as a result of the action taken by the aforementioned Defendants to deprive Plaintiff of Due Process.

## COUNT THREE: BREACH OF DUTY TO PROTECT

100. Plaintiff realleges and incorporates by reference as if fully restated herein, his allegations in paragraph 1 through 76.

101. Defendant, the Attorney General, Erick Holder, exercised deliberate indifference to protect Plaintiff's Rights to Due Process, by failing to take action and stop the violations of Plaintiff's Constitutional Rights, when he knew it was occuring.

102. Defendant, U.S. Attorney, Patrick Fitzgerald, exercised

deliberate indifference to protect Plaintiff's Rights to Due Process, when he knew that the March 25, 2002 recorded conversation was (is) stored in the "Investigative File" and he failed to disclose a copy of the recording as his duty as U.S. Attorney required him to do.

103. Defendants, U.S. Attorney General Holder and Defendant U.S. Attorney Fitzgerald, simply stood by while Defendants Hays, Collins, DePodesta, Dick, and John Doe made a mockery of the laws and Constitution of the United States in violating Plaintiff's Fourteenth Amendment Right in order to obtain a wrongfull conviction for a crime that Plaintiff did not commit. A wrongful conviction for which Plaintiff was sentenced to 17½ years imprisonment.

WHEREFORE, Donvill James, prays for Judgment in his favor and damages in his favor, against all Defendants to compensate him for the pain and mental anguish suffered and continues to suffer by him, due to the deliberate indifference and intentional misconduct of Defendants. Plaintiff, Donvill James, prays for the following relief:

1. Monetary relief in that Defendant Frank DePodesta, be Ordered to pay $2,000,000 (two million) in compensatory damages.

2. Monetary relief in that Defendant Daniel Dick, be Ordered to pay $2,000,000 (two million) in compensatory damages.

3. Monetary relief in that Defendant Valarie Hays, be Ordered to pay $5,000,000 (five million) in compensatory damages.

4. Monetary reliet in that Defendant Patirck Collins, be Ordered to pay $5,000,000 (five million) in compensatory damages.

5. Monetary relief in that Defendant John Doe, be Ordered to pay $5,000,000 (five million) in compensatory damages.

6. Monetary relief in that Defendant Patrick Fitzgerald, be Ordered to pay $10,000,000 (ten million) in compensatory damages.

7. Monetary relief in that Defendant Eric Holder, be Ordered to pay $20,000,000 (twenty million) in compensatory damages.

8. That a Trial by Jury be held to resolve this Complaint.

9. Any further relief this Court deems just and proper.

10. Grant Plaintiff attorney fees, research fees, clerical fees, he has incurred.

Date: September 1, 2010

Respectfully Submitted,

Donville James, pro se
Reg. No. 14388-424
Federal Medical Center
Box 4000, Unit 2/2
Rochester, MN. 55903-4000

Donville James
c/o

Illinois ) Attest
United States of America )

**AFFIDAVIT OF CRIMINAL CHARGES BY WITNESS AND VICTIM OF CRIMINAL ACTIVITIES**

I, Donville James, Affiant, a man upon the free soil of America, in capacity as beneficiary of the Organic Original Jurisdiction, State Affiant is of legal age, competent to testify, has personal first hand knowledge that the truth and facts herein are true, correct, complete, not misleading, so help me True God.

**OPENING STATEMENT**

On March 25, anno domni, 2002, your Affiant was arrested by Agents of the of the United States Secret Service, who took Affiant to the Secret Service Field Office located downtown Chicago, Illinois. Affiant was advised by Agent McKenna of the Secret Service that Affiant was being arrested by the Secret Service for manufacturing United States currency.

At approximately 5:30 pm, March 25, anno domini, 2002, Affiant was taken before the United States Magistrate, the Honorable Judge Schenkier, who released Affiant on a $200,000 property bond, and ordered Affiant to appear at the United States Court House on April 11, 2002 for Arraignment.

Affiant appeased before the Honorable Sidney I. Schenkir, April 11, noon domni, 2002, at which time, Affiant's Attorney advised Affiant to waive his Probable Cause Hearing. The Honorable Sidney I. Schenkier then advised Affiant that the Government had filed a Three Count Indictment against Affiant, which included:

Count One: Attempt to possess with intent to distribute in excess of five kilograms of powder cocaine in violation of 21 U.S.C. § 846.

Count Two: Possession of a firearm during and in relation to and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1(a)(1).

Count Three: Intent to defraud, possess, and conceal falsely, made, forged, and counterfeit obligations of the United States, in violation of 18 U.S.C. § 472.

Affiant entered a plea of not guilty to all three Counts.

Instead of charging Affiant for manufacturing United States currency and charges relating to couterfeiting matters, Agent Frank DePodesta Defendant, of the FBI Department, presented a sworn affidavit to the United States Magistrate, the Honorable Sidney I. Schenkier, to establish probable cause on the charges the Government brought against Affiant.

In order to demonstrate probable cause to the U.S. Magistrate for narcotics and gun charges against Affiant, Agent Frank DePodesta, Defendant, of the FBI Department, in his sowrn complaint's affidavit, included false, misrepresentation of material facts, and intentional misrepresentation of the truth.

In order to have an Indictment returned against Affiant on narcotics and gun charges, Assistant U.S. Attorney, Valarie Hays, demonstrated a reckless disregard for the truth by providing the Government criminal informant, with false, misrepresentation of material facts, and intentional misrepresentation of the truth in a prepared statement, the Government informant, read before the Federal Grand Jury.

In order to get a conviction against Affiant on narcotics and gun charges, Assistant U.S. Attorney, Valarie Hays and Patrick Collins, intentionally suppressed and manipulated evidence.

## CRIMINAL CHARGES

1. Agent Frank DePodesta, Defendant, FBI Department, did knowingly and willfully violate 18 U.S.C. § 1001, Fraud and False Statement, by making materially false, fictitious, fraudulent statements, and representation in his complaint's affidavit, establishing probable cause, knowing same contained materially false, fictitious, fraudulent statements, and entries.

2. The Government informant, Allen Dubon, did knowingly violate 18 U.S.C. § 1623(a), False Declaration Before Grand Jury, by knowingly making false material declaration before the Grand Jury, knowing the same to contain false material declaration.

3. Assistant U.S. Attorney, Valarie Hays, procurred the government informant to commit perjury in violation of 18 U.S.C. § 1622, Subornation of Perjury, by giving the government informant a prepared statement to read before the Grand Jury, knowing the same to contain materially false, fictitious statements and entries.

4. Assistant U.S. Attorney, Valarie Hays and Patrick Collins did knowingly violate 18 U.S.C. § 1519, Destruction, Alteration, or Falsification of Records in Federal Investigation and Bankruptcy, by knowingly altering, destroying, and manipulating evidence with the intent to impede, obstruct, and to influence the proper administration of Case No. 02-CR-278.

5. Assistant U.S. Attorney Valarie Hays, Patrick Collins, Agent Frank DePodesta, Defendant, FBI Department, Agent Daniel Dick of Defendant USSS, Government Informant, Allen Dubon, did knowingly violate 18 U.S.C. § 241, Conspiracy Against Rights, in that they conspired to gather to deprive Affiant of his Constitutionally guaranteed rights to Due Process of Law, a Fair Trial, and Equal Protection of the Law in Case No. 02-Cr-278.

6. Assistant U.S. Attorney, Valarie Hays, and Patrick Collins deprived Affiant of Rights guaranteed by the Federal Constitution under Color of Law in violation of 18 U.S.C. § 242, Color of Law, by prosecuting Affiant on fictitious charges.

Further, Affiant Sayeth Not.

Executed this the 3 day of the February month, anno domini, in the year two thousand zero hundred ten, in Olmsted County, de, jure, The State of Minnesota Organic.

L.S. [signature] [SEAL]
only in correct public capacity as beneficiary to the Original Jurisdiction, witness and victim to criminal activities.

I, Betty Karsten, in correct public capacity as Noterial Officer, in and for Olmsted County, the State of Minnesota, United States of America, Original Jurisdiction, State: before me personally appered Donville James, in correct public capacity as beneficiary of Original Jurisdiction, did in my presence, and under penalty of perjury in Original Jurisdiction, affirm the facts above are true, correct, complete, certain, not misleading, of first hand knowledge, did set his hand hereto on this the 3rd day of the February month, anno domini, two thousand zero hundred ten, so help me God.

[SEAL] BETTY KARSTEN Notary Public-Minnesota My Commission Expires Jan 31, 2015

Notary Public, Betty Karsten, my commission expires: 1-31-2015.

# CERTIFICATE OF SERVICE

I, Donville James, state that on 1 day of September, 2010, certify that I served a copy of the foregoing Notice and Complaint on the Parties addressed above by U.S. mail, mailed on said date.

Donville James, pro se
Reg. No. 14388-424
Federal Medical Center
Box 4000, Unit 2/2
Rochester, MN. 55903-4000